Hyung S. Choi, State Bar 015669
Veronika Fabian, State Bar 018770
CHOI & FABIAN, PLC
90 S. Kyrene Road, Suite 5
Chandler, AZ 85226
Tel: (480) 517-1400
Fax: (480) 517-6955
info@choiandfabian.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

An Lee,

                    Plaintiff,

        vs.

BHVT Motors, LLC d/b/a Bell Honda,

                    Defendant.

Case No. _____

**COMPLAINT**

(Demand for Jury Trial)

## PRELIMINARY STATEMENT

1.      Defendant sold Plaintiff a "NEW" 2021 Honda HR-V ("the HR-V") with a claimed odometer mileage of 7 miles.  In reality, the HR-V had been sold previously and presumably returned to Defendant for unknown reason(s).  Defendant hid from Plaintiff the fact that the HR-V had been previously sold.  Defendant also failed to disclose the actual mileage of the HR-V at the time of the sale, in an apparent effort to hide the prior sale.  In fact, Defendant set the odometer on the trip odometer so that Plaintiff would not realize there were over 1,200 miles on the HR-V.  Plaintiff seeks actual damages, punitive damages, and statutory damages under the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701, et seq., plus her attorneys' fees and costs.

**JURISDICTION**

2.    This Court has jurisdiction under the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701, et seq.

3.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**PARTIES**

4.    Plaintiff An Lee ("Lee") resides in Glendale, Maricopa County, Arizona.

5.    Lee is a "transferee" as defined by 49 C.F.R. § 580.3.

6.    Defendant BHVT Motors, LLC d/b/a Bell Honda ("Bell Honda") is a Delaware corporation licensed to do business in the state of Arizona.

7.    Bell Honda is a new car dealership with its primary place of business at 701 West Bell Road, Phoenix, Arizona 85023.

8.    Bell Honda is a "dealer" as defined by 49 U.S.C. § 32702(2).

9.    Bell Honda is a "transferor" as defined by 49 C.F.R. § 580.3.

**FACTS GIVING RISE TO THE CLAIMS**

10.    In April 2021, Lee decided to purchase a brand-new vehicle.

11.    On April 30, 2021, Lee went to Bell Honda to look for a new vehicle.

12.    Amongst the new vehicles located on Bell Honda's lot, Lee found a 2021 HR-V (VIN: 3CZRU5H3XMM714948), which Lee was interested in purchasing.

13.    The HR-V was parked among the new vehicle inventory on Bell Honda's lot.

14.    Bell Honda prepared, and Lee signed, a Retail Order and Retail Installment Sales Contract ("RISC") for the purchase and financing of the HR-V. **Exhibit A** and **Exhibit B**, respectively.

15.    The total cash price of the vehicle was $23,500.14.

16.    The RISC showed that the HR-V was a "new" vehicle.

17.    The RISC listed the mileage on the HR-V as 7.

18.    The Buyer's Order showed that the HR-V was a "new" vehicle.

19.    The Buyer's Order listed the mileage as 7.

20.     Bell Honda also gave Lee a Secure Odometer Disclosure, which listed the mileage as 7.  **Exhibit C**.

21.     The Secure Odometer Disclosure includes the following certification:

> I certify to the best of my knowledge that the odometer reading is the actual mileage unless one of the boxes above is checked.

22.     Neither of the boxes above was checked.

23.     The actual mileage on the HR-V at the time of sale was actually in excess of 1,200 miles.

24.     This is because Bell Honda previously sold the HR-V to another customer on February 27, 2021.  **Exhibit D:** BADVIN.org report.

25.     The actual mileage was not readily apparent to Lee because the HR-V was set to display the trip odometer instead of the cumulative odometer.  **Exhibit E**: Photograph of trip odometer B.

26.     Thus, it appeared to Lee that the odometer read near 7.

27.     Because Lee believed the HR-V was a brand-new vehicle, Lee did not think anything was unusual.

28.     Upon information and belief, Bell Honda issued a temporary registration and temporary registration plate to the prior buyer of the HR-V back on February 27, 2021.

29.     The prior buyer drove the HR-V for approximately 1,200 miles before returning it to Bell Honda.

30.     Under A.R.S. § 28-4301(33), a "[u]sed motor vehicle" means a motor vehicle that has been sold, bargained, exchanged or given away or the title to the motor vehicle has been transferred from the person who first acquired the vehicle from the manufacturer, or importer, dealer or agent of the manufacturer or importer, and that has been placed in bona fide consumer use.  For the purposes of this paragraph, "bona fide consumer use" means actual operation by an owner who acquired a new motor vehicle both:

a. For use in the owner's business or for pleasure or otherwise.

b. For which a certificate of title has been issued or that has been registered as provided by law.

31. Under A.R.S. 28-401(24), a "new motor vehicle" means a motor vehicle, other than a used motor vehicle, that is held either for:

a. Sale by the franchisee who first acquired the vehicle from the manufacturer or distributor of the vehicle.

b. Sale by another franchisee of the same line-make.

32. Because the HR-V was previously placed in bona fide use, it was a used vehicle, not a new vehicle.

33. Bell Honda also violated ARS § 28-4422, which states:

> A motor vehicle dealer may resell a new motor vehicle if all of the following apply:
>
> 1. A certificate of title is not transferred from the person who first acquired the new motor vehicle from the manufacturer or importer or agent of the manufacturer or importer.
>
> 2. The new motor vehicle is returned to the selling motor vehicle dealer.
>
> 3. The motor vehicle dealer gives written notice to the retail consumer that the vehicle was delivered to a previous purchaser.
>
> 4. The retail consumer signs an acknowledgment of receipt of the written notice prescribed by paragraph 3 and the motor vehicle dealer maintains a copy of the acknowledgment in the dealer's records.

34. Bell Honda failed to comply with ARS § 28-4422 when it sold the HR-V to Lee.

35. Lee would not have purchased the HR-V if HR-V's status as a used vehicle was properly disclosed.

36. Lee would not have purchased the HR-V if HR-V's status as previously sold and returned was properly disclosed.

37. Lee would not have purchased the HR-V if HR-V's true mileage of excess of 1,200 miles was properly disclosed.

**CAUSE OF ACTION I**

**(VIOLATION OF FEDERAL ODOMETER ACT)**

38. Bell Honda violated the federal Odometer Act by failing to make appropriate disclosures and by giving false statements in transferring ownership of the HR-V to Lee in violation of 49 U.S.C. § 32705(a)(1).

39. Bell Honda violated the federal Odometer Act with intent to defraud.

40. As a result of Bell Honda's violation of the federal Odometer Act, Lee suffered damages in an amount to be determined by this Court.

41. Defendant is therefore liable to Lee in an amount equal to three times her actual damages or $10,000.00, whichever is greater, plus reasonable attorneys' fees and costs. 49 U.S.C. § 32710.

**CAUSE OF ACTION II**

**(VIOLATION OF ARIZONA CONSUMER FRAUD ACT)**

42. In connection with the sale of the HR-V to Lee, Bell Honda made the following misrepresentations:

    a. That the HR-V was new; and

    b. That the HR-V had 7 miles on it.

43. In connection with the sale of the HR-V to Lee, Bell Honda made the following omission of material facts:

    a. That the HR-V was previously sold and returned; and

    b. That the HR-V was driven more than 1,200 miles by the prior buyer.

44. Bell Honda made those misrepresentations and material omissions with the intent that Lee rely upon those misrepresentations.

45. Lee did rely upon those misrepresentations.

46. As a result, Lee suffered damages.

47. Bell Honda's acts and omissions constitute violations of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 et seq. ("ACFA").

48. In violating the ACFA, Bell Honda acted with an evil mind, intending to economically injure Lee or consciously disregarding the substantial risk that its conduct would cause significant economic harm to Lee.

49. Lee is therefore entitled to recover actual and punitive damages.

## CAUSE OF ACTION III

## (BREACH OF CONTRACT)

50. Bell Honda warranted that the HR-V was a "new" vehicle.

51. Bell Honda breached this warranty because the HR-V was not a "new" vehicle but rather a "used" vehicle pursuant to A.R.S. 28-4301(33).

52. A.R.S. § 28-4391(33) became a part of the contract and Bell Honda breached it.

53. Lee is entitled to damages in the amount of the difference between the value of the HR-V as accepted and the value of the HR-V as warranted, plus incidental and consequential damages.  A.R.S. §§ 47-2714, 47-2715.

54. Lee is also entitled to recover her reasonable attorneys' fees and costs.  A.R.S. §§ 12-341.01.

## DEMAND FOR JURY TRIAL

55. Lee demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Lee prays that this Court enter judgment in her favor and against Defendant awarding her:

(a)  Three times her actual damages or $10,000.00, whichever is greater;

(b)  Actual damages;

(c)  Punitive damages;

(d)  Attorneys' fees and costs;

(e)  Pre-judgment and post-judgment interest at the legal rate; and

(f)  Such other relief as the court deems just and proper.

RESPECTFULLY SUBMITTED on September 10, 2021.

CHOI & FABIAN, PLC


By: */s/ Hyung S. Choi*
Hyung S. Choi
90 S. Kyrene Road, Suite 5
Chandler, AZ 85226
Tel: (480) 517-1400
hyung@choiandfabian.com
*Attorneys for Plaintiff*

# Exhibit A

# BELL HONDA
### We make it fun.

701 W. Bell Rd.
PHOENIX, ARIZONA 85023
Bus. Phone: (602) 789-9771

STOCK # 70435

969758

DATE 30 APR 2021

| E.M.I. # | T.C. # | MANAGER | SALESMAN |
|---|---|---|---|
| | | MEDLEN, DION | JOHNSON, JASO |

**RETAIL ORDER FOR A MOTOR VEHICLE**

Purchaser's Name **Include Full Middle Name(s)

PLEASE ENTER MY ORDER FOR THE FOLLOWING
☐ NEW or ☐ USED - ☐ DEMO - ☐ CAR or ☐ TRUCK

**VEHICLE BEING PURCHASED**

| YEAR 2021 | MAKE HONDA | MODEL HR-V | BODY STYLE UV |
|---|---|---|---|
| LAST PLATE NO. | LICENSE TAB NO. | EXPIRES | COLOR MODERN STEE |

SERIAL NO. 3 C Z R U 5 H 3 X M M 7 1 4 9 4 8

MILEAGE 7

Purchaser's Name
AN LEE
Street Address
4730 W NORTHERN AVE #2118
City GLENDALE   State AZ   Zip 85301
RES PHONE (623) 256-3412   BUS PHONE
E-MAIL ADDRESS   MOBILE PHONE

SELLING PRICE 20892.63

**VEHICLE BEING TRADED-IN #1**

| YEAR 2000 | MAKE CHEV | MODEL BLAZ | BODY STYLE UT |
|---|---|---|---|
| LAST PLATE NO. | LICENSE TAB NO. | EXPIRES | COLOR |

SERIAL NO. 1 G N D T 1 3 W O Y 2 2 3 5 8 4 4

MILEAGE 94083

**VEHICLE BEING TRADED-IN #2**

| YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|
| LAST PLATE NO. | LICENSE TAB NO. | EXPIRES | COLOR |

SERIAL NO.

MILEAGE

Purchaser intends to use the vehicle primarily for ☐ personal, family, or household purposes ('personal use') ☐ business, agricultural or other non-personal uses ('commercial use').

You are purchasing a service contract and / or accessories that are from a company other than the manufacturer which are not warranted by manufacturer. If you need repairs not covered by the manufacturer please contact the company that provided the service contract or accessories.
X

CUSTOMER GUARANTEES CLEAR TITLE TO TRADE-IN
X
CUSTOMER GUARANTEES A CLEAR NO SALVAGE TITLE TO TRADE-IN
X
PAYOFF BALANCE AND LICENSE FEES ARE ESTIMATES ONLY. IF THE BALANCE AND FEES ARE VERIFIED MORE THAN ESTIMATED, CUSTOMER WILL PAY THE DIFFERENCE.
X

*LIMITATIONS/EXCLUSIONS OF PRODUCT WARRANTIES*
For NEW vehicles:
(1) If the Vehicle is purchased for personal use, **WE MAKE NO IMPLIED WARRANTY OR OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE** unless we also give you a written warranty, on our own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days afterward, we enter into a service contract with you which applies to the Vehicle. In that event, any implied warranties arising from the sale of the Vehicle shall be limited to the duration of our written warranty or service contract.

(2) If the Vehicle is purchased for commercial use, **WE MAKE NO IMPLIED WARRANTY OR OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. THE VEHICLE IS SOLD TO YOU AS IS, EXCEPT FOR ANY EXPRESS WARRANTIES WE MAKE ON OUR OWN BEHALF OR BY THE MANUFACTURER OF THE VEHICLE OR OF ANY COMPONENT PARTS.**

For USED vehicles:
(1) Used Car Implied Warranty of Merchantability:
THE SELLER HEREBY WARRANTS THAT THE VEHICLE WILL BE FIT FOR THE ORDINARY PURPOSES FOR WHICH THE VEHICLE IS USED FOR 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER, EXCEPT WITH REGARD TO PARTICULAR DEFECTS DISCLOSED ON THE FIRST PAGE OF THIS AGREEMENT. YOU (THE PURCHASER) WILL HAVE TO PAY UP TO $25.00 FOR EACH OF THE FIRST TWO REPAIRS IF THE WARRANTY IS VIOLATED.

(2) Waiver of Used Car Implied Warranty of Merchantability:
ATTENTION PURCHASER: SIGN HERE ONLY IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:

1. _____
2. _____
3. _____
Buyer _____
Buyer _____

(3) **THE VEHICLE IS SOLD "AS IS – NOT EXPRESSLY WARRANTED OR GUARANTEED"** unless we give you a separate written instrument showing the terms of any warranty or service contract given by us on our own behalf.

**NO LIABILITY COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE IS INCLUDED IN THIS CONTRACT**

BY SIGNING THIS ORDER YOU CERTIFY THAT YOU ARE 18 YEARS OF AGE OR OLDER AND ACKNOWLEDGE THAT YOU HAVE READ ITS TERMS AND CONDITIONS ON BOTH SIDES, INCLUDING THE ARBITRATION CLAUSE, AND HAVE RECEIVED A TRUE COPY OF THIS ORDER.

| | | |
|---|---|---|
| PRICE OF CAR AFTER EQUIPMENT CHANGE | 20892.63 | |
| LESS TRADE ALLOW | 2000.00 | |
| ZAKTEK ULTIMATE (Optional) | $499 | 00 |
| TAXABLE TOTAL (less manufacturers to consumer rebate of $ ___ N/A ___ assigned to dealer) | 19391.63 | |
| SALES TAX | 1642.41 | |
| TIRE DISPOSAL TAX (NEW CAR ONLY) | $5 | 00 |
| LICENSE, TRANSFER TITLE & REGISTRATION FEE (GVW RATING ___) *$100.00 Charge for duplicate titles. | 470.23 | |
| DOCUMENTARY FEE | $499 | 00 |
| **TOTAL CASH PRICE** | 22008.27 | |
| PAYOFF ON TRADE DUE TO NONE | | |
| LENDER ADDRESS | | N/A |
| | | |
| | | N/A |
| | | N/A |
| | | N/A |

| TOTAL CASH DOWN | DEPOSIT | | N/A |
|---|---|---|---|
| | RECEIPT | | |
| | CASH DELIVERY | | |
| | RECEIPT NO. | | |
| | MANUFACTURERS TO CONSUMER REBATE, ASSIGNED TO DEALER | | |
| | **UNPAID BALANCE** | 22008.27 | |

BUYER'S SIGNATURE X _____ DATE 04/30/21

ACCEPTED BY MANAGER _____ FINANCE MUELLER, JON J

INSURANCE AGENT _____
ADDRESS _____
Tele No. _____ / Policy No. _____

The Reynolds and Reynolds Company   RO620818 O (01/18)

1. The following definitions apply to this Order: (i) "Dealer" is "our" and "we" mean or refer to the authorized Dealer named in this Order and who becomes a party to this Order by accepting it; (ii) "Buyer" and "you" mean or refer to the party executing this Order as such; (iii) "Manufacturer" means the corporation that manufactured the Vehicle; (iv) "Vehicle" is the vehicle or chassis that is the subject of this Order; and (v) "Trade-in" is the used vehicle that Buyer intends to use as a part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.

We are not the Manufacturer's agent. You and we are the only parties to this Order. References in this Order to Manufacturer are for the purpose of describing certain relationships between the Manufacturer and us relating to new vehicles.

2. The Manufacturer may increase the price or change the design of any new vehicle, chassis or related accessory at any time without notice. If we are unable to obtain the Vehicle at its price existing at the date of this Order by reason of such change in price or design or for any other reason, such as factory unavailability, then you and we will have the option to cancel this Order. In such event, you will not be entitled to recover from us any damages of any nature, including consequential or incidental damages, or damages for loss of use, time, profits, income or of any other nature.

3. If you are not to deliver your Trade-in to us until we are to deliver the Vehicle to you, this paragraph applies. We will reappraise the Trade-in when you deliver it to us. The reappraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown in this Order, you may cancel this Order. You must exercise your right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us.

4. You agree to give us satisfactory evidence of title to any Trade-in when you deliver it to us. You represent that you own any Trade-in. You represent that the Trade-in is free and clear of all liens and encumbrances except those shown in this Order, and that the payoff information shown in this Order is accurate. You represent that the Trade-in's mileage shown in this Order is accurate. Should the actual payoff be less, we will refund the difference to you. If the payoff is more, you agree to pay the difference to us on demand. You represent that the title certificate to the Trade-in is not a "salvage" title certificate and that the Trade-in has never been reconstructed or repaired by reason of collision or other damage. If any of these representations is false, you will repurchase the Trade-in from us for the full price allowed to you plus all costs we incur in resolving this matter, including but not limited to reconditioning costs, legal fees, court and collection costs.

5. If you fail or refuse to accept delivery of the Vehicle or comply with this Order, we may keep any cash deposit as liquidated damages, to the extent not prohibited by law. We may reimburse ourselves for any expenses and losses we incur or suffer as a result of your failure or refusal. Such expenses and losses may include our reasonable attorneys' fees. This section doesn't apply if you cancel this Order under section 2 or 3.

6. We aren't liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to any cause beyond our control or without our fault or negligence.

7. You agree to sign such agreements or documents as we may require to effect the terms and conditions of payment shown in this Order. If you are entering into a retail installment sales agreement with us in connection with this transaction, all provisions of this Order that are not inconsistent with the terms and conditions of such retail installment sales agreement, including, without limitation, the Arbitration clause below, shall remain in full force and effect.

8. Used car Buyers Guide - **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISION IN THE CONTRACT OF SALE.** Spanish Translation - **GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRACTO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.**

9. If you pay us with a check that is dishonored or unpaid for any reason, we may at our sole option, declare this Order null and void and retake the Vehicle, or make claims against you on the check. In addition we will charge you a $25 returned check charge.

10. If for any reason you and we do not complete the Vehicle sale and purchase, or financing is not obtained, this section applies. You will return the Vehicle to us. You will pay us on demand all reasonable charges and expenses for any damage to or use of the Vehicle. To the extent permitted by law, you will pay us the greater of $.30 per mile or $20 per day for your use of the Vehicle. When you have paid us the amounts you owe under this Order, we will return the Trade-in. If you fail to return the vehicle within 24 hours of notice, you agree that we may, solely at our option, cancel the sale and retake immediate possession of the Vehicle and in addition to those charges specified above, you agree to pay us all reasonable expenses we incur in connection with retaking the Vehicle, including attorney's fees and other expenses to the extent permitted by applicable law.

11. This paragraph applies if you are financing the Vehicle through us by signing a retail installment sales contract. We intend to sell and assign your retail installment sales contract to a bank, finance company or other financing source. When we do, we may keep a part of the finance charge shown in the contract. This Order will not be binding until it is accepted by our authorized representative, you have signed and received a copy of the retail installment sales contract containing federal credit disclosures, and a financial institution has agreed to buy the retail installment sales contract. If the financial institutions that we regularly sell contracts to refuse to purchase the contract on terms satisfactory to us, we may rescind this Order and the retail installment sales contract and you agree to return the Vehicle to us on demand.

12. EXCEPT FOR SPECIFICALLY ALLOWABLE LOSSES RESULTING FROM A BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY, IF APPLICABLE, YOU ARE NOT ENTITLED TO RECOVER FROM US ANY CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES, PROPERTY DAMAGES, OR DAMAGES FOR LOSS OF USE, TIME, INCOME OR PROFIT.

13. The price of the Vehicle includes reimbursement for Federal Excise taxes, but does not include any federal, state or local taxes or state taxes unless expressly so stated on the face of this Order. You assume and agree to pay any such sales or use taxes imposed on or applicable to the transaction covered by this Order regardless of which party may have the primary tax liability therefore.

14. If it is necessary for us to take legal action to enforce, protect, or defend any of our rights under this Order, you agree to pay to the extent permitted by law, such sums as attorneys' fees as the court may deem reasonable, expenses of litigation or court costs.

15. FOR USED CARS:   If the Vehicle is purchased for personal use, **WE MAKE NO IMPLIED WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE, AND THE IMPLIED WARRANTY OF MERCHANTABILITY IS LIMITED TO 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER, AS SET FORTH ABOVE,** unless we also give you a written warranty, on our own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days afterward, we enter into a service contract with you which applies to the Vehicle. In the event, any implied warranties arising from the sale of the Vehicle shall be limited to the duration of our written warranty or service contract. **IF THE VEHICLE IS PURCHASED FOR COMMERCIAL USE, WE MAKE NO IMPLIED WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE, AND THE IMPLIED WARRANTY OF MERCHANTABILITY IS LIMITED TO 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER.**

---

**16.   ARBITRATION CLAUSE**

**Please read the Arbitration Clause carefully before you sign this agreement. This Arbitration Clause significantly affects your rights in any dispute with us, including the following:**

- **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT. EVEN IF A SUIT HAS BEEN FILED, YOU OR WE MAY ELECT TO ARBITRATE, AS LONG AS A JUDGEMENT HAS NOT BEEN RENDERED.**

- **IN ARBITRATION, YOU AND WE EACH GIVE UP OUR RIGHT TO A TRIAL BY THE COURT OR A JURY TRIAL.**

- **IN ARBITRATION, YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

- **THE INFORMATION YOU AND WE MAY OBTAIN IN DISCOVERY FROM EACH OTHER IN ARBITRATION IS GENERALLY MORE LIMITED THAN IN A LAWSUIT.**

A "dispute" is any claim or dispute, whether in contract, tort or otherwise (including without limitation, the interpretation and scope of this clause, the arbitrability of any issue and matters relating to the consummation, servicing, collection or enforcement of this Agreement and any retail installment sales agreement), between you and us or our employees, agents, successors or assigns, which arise out of or relate to this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement). At your or our election (or the election of any such third party), any dispute shall be resolved by neutral, binding arbitration and not by a court action. We and you waive the right to require arbitration of any dispute involving an amount of $5,000 or less, brought and maintained as an individual action.

If you notify us by certified mail at P.O Box 85055, Phoenix, AZ 85080 within 30 days of the date of this Order that you elect not to be bound by the terms of this Arbitration Clause, this Arbitration Clause will not apply.

Any claim or dispute is to be arbitrated on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the applicable rules of either of the following arbitration organizations: the American Arbitration Association, 355 Madison Ave., Floor 10, New York, New York 10017 4605 (www.adr.org), or the National Arbitration Forum, Box 50191, Minneapolis, Minnesota 55405-0191 (www.arb-forum.com). You may obtain the rules of these organizations by visiting the web sites indicated or, by mail at the address indicated.

The arbitrators shall be attorneys or retired judges. The arbitrators shall be selected in accordance with the applicable rules. The arbitration award shall be in writing, but without a supporting opinion. The arbitrator shall apply governing law in making an award.

The arbitration hearing shall be conducted in the county in which you purchased the vehicle. If you demand arbitration first, you will pay one half of any arbitration filing fee. We will pay the rest of the filing fee, and the whole filing fee if we demand arbitration first or if the arbitrator determines that applicable law or the enforceability of this Arbitration Clause requires us to do so. The arbitrator shall decide who shall pay any additional costs and fees. The losing party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. Otherwise, the arbitrator's award shall be final and binding on all parties.

Both you and we retain the right to exercise self-help remedies and to seek provisional remedies from a court. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing or answering suit, or seeking or obtaining provisional remedies from a court. Judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction. If any part of this Arbitration Clause is deemed or found to be unenforceable for any reason the rest of the Arbitration Clause remains enforceable. This Agreement evidences a transaction involving interstate commerce. The Federal Arbitration Act ("FAA") shall govern any arbitration under this Arbitration Clause.

# Exhibit B

# LAW 553-AZ-ARB-e 7/20

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| AN LEE<br>4730 W NORTHERN AVE #2118<br>GLENDALE, MARICOPA, AZ 85301 | N/A | BELL HONDA<br>701 WEST BELL ROAD<br>PHOENIX, AZ 85023 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2021 | Honda HR-V | 7 | 3CZRU5H3XMM714948 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural  ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit including your down payment of $ 2,000.00 |
|---|---|---|---|---|
| 1.90 % | $ 1,313.25 | $ 22,008.27 | $ 23,321.52 | $ 25,321.52 |

(e) means an estimate

**APPLICABLE LAW**
Federal law and the law of the state of Arizona apply to this contract.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ N/A _____ Mos.

_____ N/A _____
Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X __N/A__

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 323.91 | Monthly beginning 06/14/2021 |
| One Final Payment Of | $ N/A | On  N/A |
| N/A | | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### FOR USED VEHICLES ONLY

The Seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

**ATTENTION PURCHASER:** SIGN HERE **ONLY** IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:

**ATENCIÓN COMPRADOR:** FIRME AQUÍ **SOLAMENTE** SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y QUE USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO BAJO ESTOS TÉRMINOS:

1. N/A          2. N/A          3. N/A

X __N/A__                    N/A
**Buyer Signs**          (Date)

X __N/A__                    N/A
**Co-Buyer Signs**          (Date)

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _An Lee_          Co-Buyer Signs X _N/A_

**ITEMIZATION OF AMOUNT FINANCED**

1  Cash Price

| | | |
|---|---|---|
| A | Cash Price of Motor Vehicle (including accessories, services) | $ 21,391.63 |
| B | Sales Tax | 1,609.51 |
| C | Prior Credit or Lease Balance paid to N/A | $ N/A |
| D | Other Documentation Fee | $ 499.00 |
| E | Other N/A | $ N/A |
| F | Other N/A | $ N/A |
| G | Other N/A | $ N/A |
| H | Other N/A | $ N/A |
| | Total Cash Price (A through H) | $ 23,500.14  (1) |

2  Total Downpayment =

Trade-In 2000 Chevrolet Blazer
(Year)      (Make)          (Model)

| | |
|---|---|
| Gross Trade-In Allowance | $ 2,000.00 |
| Less Pay Off Made By Seller to NONE | N/A |
| Equals Net Trade In | 2,000.00 |
| + Cash | N/A |
| + Other N/A | $ N/A |
| + Other N/A | $ N/A |
| + Other N/A | $ N/A |

(If total downpayment is negative, enter "0" and see prior credit or lease balance, item 1C, above)    $ 2,000.00  (2)

3  Unpaid Balance of Cash Price (1 minus 2)    $ 21,500.14  (3)

4  Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts):

| | | |
|---|---|---|
| A | Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | |
| | Life | $ N/A |
| | Disability | N/A |
| B | Other Optional Insurance Paid to Insurance Company or Companies | N/A |
| C | Optional Gap Contract | N/A |
| D | Official Fees Paid to Government Agencies | 32.90 |
| E | Government Taxes Not Included in Cash Price | N/A |
| F | Government License and/or Registration Fees | |
| | N/A | |
| | License and Registration Fees | $ 446.38 |
| G | Government Certificate of Title Fees | $ 4.00 |
| H | Other Charges (Seller must identify who is paid and describe purpose) | |

| | | |
|---|---|---|
| to STATE OF AZ | for Tire Fee | $ 5.00 |
| to STATE OF AZ | for Flat Fee | 18.35 |
| to STATE OF AZ | for Postage Fee | 1.50 |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |
| to N/A | for N/A | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf    $ 508.13  (4)

5  Amount Financed (3 + 4)    $ 22,008.27  (5)

If the "Amount Financed" exceeds $58,300 or if the motor vehicle is primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance".

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
N/A , Year  N/A . SELLER'S INITIALS   N/A

This is not the Authoritative Copy.

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

### Optional Credit Insurance

☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:

Credit Life $ N/A
Credit Disability $ N/A

Insurance Company Name
N/A

Home Office Address
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost–if you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit/disability insurance does not cover any increase in your payment or in the amount of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐

| N/A | N/A |
|---|---|
| Type of Insurance | Term |

Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

☐

| N/A | N/A |
|---|---|
| Type of Insurance | Term |

Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A                                    N/A
Buyer Signature                          Date

X N/A                                    N/A
Co-Buyer Signature                       Date

**Returned Check Charge:** You agree to pay a charge of $25.00, plus actual charges assessed by a financial institution, if any check you give us is dishonored.

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed with a day counted as 1/365th of a year (or 1/366th in a leap year).
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.
      If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we will subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
      If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      • You do not pay any payment on time;
      • You give us false, incomplete, or misleading information during credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **Debtor's Liability for Failure to Return Vehicle:** If you are in default, we may send you a notice of default. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on the contract. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming there are no aggravating circumstances, and you have no prior felony convictions, the maximum penalty is 1.5 years in prison and a $150,000 fine.
   d. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any reasonable collection costs we incur as the law allows.
   e. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   f. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   g. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   h. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

This is not the Authoritative Copy.

*This is not the Authoritative Copy.*

**WARRANTIES**

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the vehicle as is – not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described above) or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

---

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

---

**SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

---

**SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:**
(a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this contract. In consideration of our agreeing to deliver the vehicle, you agree that if we are unable to assign the contract to any one of the financial institutions with which we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this contract. (c) In the event we cancel this contract, we shall give you notice of the cancellation. Upon delivery of such notice, you shall immediately return the vehicle to us in the same condition as when sold reasonable wear and tear excepted. We agree, upon cancellation of this contract to restore to you all consideration we received in connection with this contract, including any trade-in vehicle. (d) In the event the vehicle is not immediately returned to us upon notice of our cancellation of this contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the vehicle, including attorney's fees, and we shall have the right to repossess the vehicle with free right of entry wherever the vehicle may be found, as the law allows. (e) While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle shall be in full force and all risk of loss or damage in the vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the vehicle while in your possession or control of and until the vehicle is returned to us.

---

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

**GUARANTY**

The undersigned, jointly and severally, guarantee payment of all amounts owing under this contract and the payment upon demand of the entire amount owing on this contract in the event of default in payment by Buyer named therein. The undersigned waives notice of performance, demands for performance, notice of non-performance, protests, notice of protests, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer as provided in A.R.S. §§ 12-1641 *et seq.* The undersigned agree to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the undersigned's financial condition as may be reasonably requested. The undersigned acknowledges receipt from the Seller, prior to signing below, of a separate "Notice to Cosigner."

| N/A | N/A |
|---|---|
| DATED AT | GUARANTOR |
| N/A | N/A |
| DATED AT | GUARANTOR |

Marital Community Property Joinder: The undersigned spouse of the Guarantor joins in the execution of this guaranty for the purpose of binding the marital property of the Guarantor, and the undersigned, in accordance with A.R.S. § 25-214 or other applicable law. THE UNDERSIGNED SPOUSE OF THE GUARANTOR ACKNOWLEDGES RECEIPT FROM THE SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

| N/A | N/A |
|---|---|
| Date | Spouse of the Guarantor |

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

☐ IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO
   N/A                                                                                    .

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

You acknowledge an express intent to grant a security interest in the vehicle and hereby waive and abandon all personal property exemptions granted upon the vehicle, which is the subject of this contract. NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.

### ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

This is not the Authoritative Copy.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs **X** _an Lee_ _____ Co-Buyer Signs **X** N/A _____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**NOTICE TO THE BUYER: (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign.**

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 5, BEFORE SIGNING BELOW.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.

The Arizona Department of Insurance and Financial Institutions regulates the Seller and can be contacted at 100 N 15th Avenue, Suite 261, Phoenix, AZ 85007-2630, (602) 771-2800, if you have any complaints concerning this contract.



**X** _an Lee_        04/30/2021                **X** N/A                                N/A
Buyer Signs          Date                      Co-Buyer Signs                          Date

AN LEE                                         N/A
Buyer Printed Name                             Co-Buyer Printed Name

**X** BELL HONDA      04/30/2021      By **X** _____      Fi mgr
Seller Signs          Date                                        Title

If the "business" use box is checked in "Primary Use for Which Purchased", Print Name N/A _____ Title N/A

**SEE THE REST OF THIS CONTRACT FOR OTHER IMPORTANT TERMS AND AGREEMENTS.**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** N/A _____ Date N/A ___ Address N/A ___

This is not the Authoritative Copy.

# Exhibit C



**Motor Vehicle Division**

96-0165 R09/13   azdot.gov

# SECURE ODOMETER DISCLOSURE

## Void If Altered Or Erased

| Vehicle Identification Number | | Year | Make | | Body Style | |
|---|---|---|---|---|---|---|
| 3CZRU6H36HM748... | | 201. | HOND | | JT | |
| Buyer Name | | | Sale Date | Title Number | | |
| AN LEE | | | 04/26/2021 | | | |

Federal and State law require that the seller states the mileage in connection with the transfer of ownership. Failure to complete the odometer statement, or providing a false statement, may result in fines and/or imprisonment.

| Odometer Reading (no tenths) | ☐ miles   ☐ kilometers | ☐ Mileage in excess of the odometer mechanical limits. |
|---|---|---|
| 7        XX | | ☐ NOT Actual Mileage, WARNING – ODOMETER DISCREPANCY. |

I certify to the best of my knowledge that the odometer reading is the actual mileage unless one of the boxes above is checked.

| Seller/Dealership Name (printed) | | | Dealer Number |
|---|---|---|---|
| BELL HONDA | | | |
| Street Address | City | State | Zip |
| 701 W. BELL ROAD | PHOENIX, AZ | | 85023 |
| Agent Name | Seller/Agent Signature | | |
| JON J BOLDEN FI AGENT | | | |

I am aware of the above odometer certification made by the seller.

| Buyer Name (printed) | Buyer Signature |
|---|---|
| AN LEE | |

### BUYER

# Exhibit D



**BADVIN**    🔧 Sales ⌄    🔧 Pricing    ⓘ FAQ    📖 Blog    ⚲ Reviews    hyung@choiandfabian.com ⌄



🔍 Enter VIN to check BADV | Search

Try to enter your VIN above and see what we have for you, it's totally **FREE**.

## 2021 HONDA HR-V - 3CZRU5H3XMM714948 - BADVIN Premium

🏠 Home / HONDA ⌄ / HR-V ⌄ / 3CZRU5H3XMM714948 / BADVIN Premium



✓ | Congrats! You have full access to this VIN.
Please feel free to contact us in case of any questions or issues. You can reach us using chat. Thank you. | ✕

---

### BADVIN Premium Report for 3CZRU5H3XMM714948

Found **3** historical records.
Last reported mileage: **15 mi**

🖨 Print

**2021 HONDA HR-V LX**
4 DOOR WAGON/SPORT UTILITY, FRONT WHEEL DRIVE
1.8L I4, GASOLINE

---

**BADVIN Report**
There are **1** different sources available

**BADVIN Premium Report** ⓑ
Found **3** historical records
Last reported mileage: **15 mi**

### Owners Events

**Owner #1**
2021-02-27 ━ now (2 months)
States: AZ
Last odometer reported: 15 mi
Mileage for the period: 15 mi

### Mileage Events

| Date | Mileage |
|---|---|
| 2021-04-30<br>4 days ago | 15 mi<br>+4 mi for 4 months |
| 2021-01-14<br>4 months ago | 11 mi |

### Events List

| Date | Mileage | Source | Comment |
|---|---|---|---|
| 2021-04-30<br>4 days ago | 15 mi | Bell Honda<br>Phoenix, AZ | Vehicle serviced<br>Maintenance inspection |

1/2

|  |  |  |  |
|---|---|---|---|
|  |  | 602-298-2043<br>bellhonda.com | completed<br>Key(s) (re) programmed |
| 2021-02-27<br>2 months ago |  | Arizona<br>Motor Vehicle<br>Dept.<br>Tempe, AZ | Registration issued or renewed<br>First **owner reported**<br>Titled or registered as personal<br>vehicle |
| 2021-01-14<br>4 months ago | 11 mi | Bell Honda<br>Phoenix, AZ<br>602-298-2043<br>bellhonda.com | Vehicle serviced<br>Pre-delivery inspection completed<br>Door edge guards installed<br>Mud flaps/splash guards<br>installed<br>Accessories installed<br>Window tint installed |

Enter VIN to check BADV    Search

© 2018—2021

Contributors Program / Terms Of Use / Privacy Policy

support@badvin.org

The information on vehicles provided here is supplied by third parties; BADVIN.ORG is not responsible for the accuracy of any information. BADVIN.ORG provides all service and materials without representations or warranties of any kind, either expressed or implied. Use BADVIN search and reports along with certified vehicle inspection and test drive. See Terms of Use for more details.

# Exhibit E

